O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN ANDREZ LOMELI, an individual, et al., <br><br> Plaintiff, <br><br> v. <br><br> COUNTY OF LOS ANGELES, a public entity, et al., <br><br> Defendant. | Case No. 2:10-cv-9963-ODW (CWx) <br><br> **ORDER DENYING SUMMARY JUDGMENT [51]** |

Pending before the Court is Defendants County of Los Angeles, Leroy Baca, Andrew Shackelford, Steven Perez, Christine Wargo, Daniel Torres, Jorge Arceo, Cuong Nguyen, and Victor Iniguez's (collectively "Defendants") Motion for Summary Judgment. (Dkt. No. 51.) Having considered the papers and evidence filed in support of and in opposition to the instant Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C. D. Cal. L. R. 7-15. For the following reasons, the Court **DENIES** Defendants' Motion.

## I. BACKGROUND

Plaintiffs Benjamin Andrez Lomeli ("Lomeli"), Victoria Molina ("Victoria"), and their two children live in Rowland Heights, California. (Langton Decl. Ex. 2, at 13:23–25.)

1    Around 12:00 a.m. on December 31, 2008, Sergeant Perez, Detective Wargo, and Deputies Shackelford, Torres, Arceo, Nguyen, and Iniguez, from the Los Angeles County Sheriff's Department, arrived at Lomeli's home in response to a 9-1-1 emergency call reporting a man shooting at cars. (Langton Decl. Ex. 4 ¶ 2; Ex. 7 ¶ 2; Ex. 8 ¶ 2.) The 9-1-1 caller reported that Lomeli was armed with a rifle. (*See* Langton Decl. Ex. 4 ¶ 4; Ex. 7 ¶ 4; Ex. 8 ¶ 4.) Consequently, after the Deputies arrived, they ordered Lomeli and Victoria, who were standing in their driveway, to put up their hands. (Lomeli Decl. at 1:10–12.) Lomeli and Victoria complied with the Deputies' orders. (*Id.* at 1:12; Langton Decl. Ex. 2, at 170:2–6.) Then, one of the Deputies ordered Lomeli and Victoria to put their hands behind their heads and walk backwards toward the Deputies in the street. (Lomeli Decl. at 1:13–14; Langton Decl. Ex. 4 ¶¶ 3–4.) Victoria complied with the Deputy's orders. (Lomeli Decl. at 1:14; Langton Decl. Ex. 4 ¶ 6.) Lomeli was uncooperative—he told the officers, "I'm right here. Come and talk to me." (Langton Decl. Ex. 2, at 183:5–12.) Lomeli told the officers he would not go in the street because he feared that the officers would beat or shoot him. (Lomeli Decl. at 1:19–20; Langton Decl. Ex. 2, at 152:15–19.) Lomeli appeared to be intoxicated. (Langton Decl. Ex. 4 ¶ 5.) At one point, Lomeli attempted to remove his shirt, struggled because he did not unbutton it, and finally ripped off his shirt. (Lomeli Decl. at 1:20–21; Langton Decl. Ex. 2, at 186:14–25.) At one point Lomeli may have yelled at the Deputies. (Langton Decl. Ex. 2, at 201:10–18; Ex. 3 ¶ 5.)

The Deputies then ordered Lomeli to lie face down in his driveway. (Langton Decl. Ex. 3 ¶¶ 9–10.) According to Defendants, Lomeli refused to lie down, but sat down instead. (*Id.* ¶ 10.) Plaintiffs deny this, alleging that Lomeli laid face down as commanded. (Lomeli Decl. at 1:17.) Regardless, Lomeli ultimately laid face down, and at some point rolled onto his back. (Lomeli Decl. at 1:27; Langton Decl. Ex. 2, at 197:12–16.) Plaintiffs aver that while Lomeli was laying face down, the Deputies were shouting repeatedly, "shoot the motherfucker." (Lomeli Decl. at 1:23–25.)

Defendants do not deny the calls to "shoot the motherfucker," but rather deny that Lomeli laid face down. (Reply to Pl. Additional Mat. Facts ¶¶ 13–14.)

Plaintiffs maintain that after rolling onto his back Lomeli continued to spread out his arms; Defendants dispute this contention. (Lomeli Decl. at 1:27–2:1. *But see* Reply to Pl. Additional Material Facts ¶ 16.) According to the Deputies, the Deputies were concerned for their safety because Lomeli was reported to have had a rifle and was refusing to cooperate. (Langton Decl. Ex. 4 ¶ 11; Ex. 7 ¶ 11; Ex. 8 ¶ 11.) Plaintiffs allege that prior to being shot, Lomeli pled to the Deputies, "don't shoot me, don't shoot me, don't shoot me"; Defendants deny this. (Lomeli Decl. at 2:5–6. *But see* Reply to Pl. Additional Material Facts ¶ 21.) According to Plaintiffs, Lomeli never reached for his waistband or made any sudden moves. (Lomeli Decl. at 2:7–8.) Defendants contend that Lomeli did make a sudden move when he rolled onto his back. (Reply to Pl. Additional Material Facts ¶¶ 23–24.)

Ultimately, Deputy Torres—at the direction of Sergeant Perez—fired at Lomeli one less lethal SL6 round, which is a plastic bullet, striking him in the chest. (Langton Decl. Ex. 4 ¶ 12.) Plaintiffs aver that Deputy Torres was only five to seven feet from Lomeli when Deputy Torres discharged the SL6 round. (Lomeli Decl. at 2:9–10.) Defendants dispute this. (Reply to Pl. Additional Material Facts ¶ 26.) After being struck with the SL6 round, Lomeli rolled onto his stomach and was taken into custody. (*Id.* ¶ 13.) After Lomeli was shot by Deputy Torres, Victoria observed the Deputies congratulate each other, which Defendants do not dispute. (Molina Decl. at 3:1–2.)

As a result of these events, Plaintiffs filed a Complaint against Defendants on January 5, 2011, alleging excessive force and *Monell* liability under 42 U.S.C. § 1983 and various state claims. (Dkt. No. 3.) Defendants filed an answer to Plaintiffs' complaint on February 2, 2011. (Dkt. No. 18.) Defendants subsequently filed a Motion for Judgment on the Pleadings, which the Court granted in part and denied in part on May 31, 2011, dismissing all but the two § 1983 claims for excessive force

and *Monell* liability.  (Dkt. No. 28, 36.)  On January 13, 2012, Defendants moved for Summary Judgment on the two remaining § 1983 claims, to which Plaintiffs filed an opposition.  (Dkt. No. 51, 56.)

## II.   RULE 56 LEGAL STANDARD

Summary judgment is appropriate when, after adequate discovery, the evidence—viewed in the light most favorable to the nonmoving party—demonstrates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968).  An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.  *Id.*  Evidence the court may consider includes the pleadings, discovery and disclosure materials, and any affidavits on file.  Fed. R. Civ. P. 56(c)(2).  Where the moving party's version of events differs from the nonmoving party's version, "courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotation marks omitted).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  The moving party may satisfy that burden by "showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  *Id.* at 325.

Once the moving party has met its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, the nonmoving party must go beyond the pleadings and identify specific facts that show a *genuine issue for trial*.  *Id.* at 587; *see also Celotex*, 477 U.S. at 323–34 (same); *Liberty Lobby*, 477 U.S. at 248 (same).  Only genuine disputes over facts that

might affect the outcome of the suit will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248; *see also Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (finding that the non-moving party must present specific evidence from which a reasonable jury could return a verdict in its favor). A genuine issue of material fact must be more than a scintilla of evidence, or evidence that is merely colorable or not significantly probative. *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000).

Further, it is not the task of the district court "to scour the record in search of a genuine issue of triable fact. [C]ourts rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)); *see also Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) ("The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found.").

Finally, the evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson*, 477 U.S. at 253.

### III.   DISCUSSION

Defendants move for summary judgment on Plaintiffs' claims for excessive force under 42 U.S.C. § 1983, *Monell* liability under § 1983 against Sheriff Baca and the County of Los Angeles. In their Opposition, Plaintiffs voluntarily dismiss all claims involving Sheriff Baca and *Monell* liability. Accordingly, the Court **DISMISSES** Plaintiffs' *Monell* claim; Defendants Sheriff Baca, the Los Angeles

County Sheriff's Department, and the County of Los Angeles are therefore **DISMISSED** as parties to this action. The Court proceeds to consider Plaintiffs' remaining claim under § 1983 for excessive force and the requested punitive damages.

### A.   PLAINTIFFS' § 1983 CLAIM AGAINST THE DEPUTIES

Defendants assert that the Deputies are entitled to summary judgment on Plaintiffs' first claim for civil rights violations under 28 U.S.C. § 1983 because the Deputies were subject to qualified immunity. Plaintiffs oppose summary judgment, contending the Deputies are not entitled to qualified immunity because there was no objective reason to fire a less lethal round at Lomeli. Plaintiffs aver both that there is a genuine issue of material fact and that it cannot be said as a matter of law that the Deputies' use of force was reasonable. The Court agrees.

Qualified immunity protects government officials from civil suit under 42 U.S.C. § 1983 where an objectively reasonable officer would not have known that his conduct was unconstitutional under the circumstances. *Saucier v. Katz*, 533 U.S. 194, 202 (2001)*, rev'd on other grounds, Pearson v. Callahan*, 555 U.S. 223 (2009). In considering whether qualified immunity applies, a district court must inquire whether (1) "the facts alleged show the officer's conduct violated a constitutional right" and (2) the right was "clearly established." *Id*. at 201. The two prongs need not be analyzed in any particular order. *See Pearson*, 555 U.S. at 236 ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."). Although it is not mandatory, it is "often appropriate" and "beneficial" for a court first to address whether a constitutional right was violated and then address whether the right was clearly established. *Id.* Accordingly, the Court begins its analysis with the first prong in reference to Plaintiffs' excessive force claim.

///

///

1. *Whether alleged facts show a violation of Lomeli's constitutional right*

An excessive force claim is adjudicated under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). Determining whether the force exerted was unreasonable under the Fourth Amendment "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interest against the countervailing governmental interests at stake." *Id.* at 396 (internal quotation marks omitted). Proper application of the reasonableness test under the Fourth Amendment "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." *Id.* Indeed, the use of force must be necessary to be reasonable. *Blankenhorn v. City of Orange*, 485 F.3d 463, 480 (9th Cir. 2007). Further, "[t]he reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Law enforcement officers are not required to give warnings before using less than deadly force. *Deorle v. Rutherford*, 272 F.3d 1272, 1284 (9th Cir. 2001). However, "warnings should be given, when feasible, if the use of force may result in serious injury, and . . . failure to do so is a factor to be considered in applying the *Graham* balancing test." *Id.*

Here, the Court cannot say that Deputy Torres's use of the SL6 round against Lomeli was reasonable as a matter of law. The Court acknowledges that the safety of law enforcement officers is a significant government interest, and the Deputies asserted in their declarations that they feared for their safety. Nonetheless, "a simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern." *Deorle*, 272 F.3d at 1281.

The severity of the reported crime to which the Deputies were responding was not insignificant. The 9-1-1 caller had reported a man shooting at cars. The severity

of shooting at cars could range widely—if the cars were unoccupied, the crime would be significantly less severe than if they were occupied and the shooter were intending to harm or kill the occupants. *See United States v. Coronado*, 603 F.3d 706, 712 (9th Cir. 2010) (holding that "discharging a firearm in a grossly negligent manner is not a crime of violence under U.S. Sentencing Guideline § 4B1.2" (internal quotation marks omitted)); Cal. Penal Code § 245 (assault with a firearm is punishable by up to four years in prison); Cal. Vehicle Code § 23110 (discharging a firearm at a vehicle with intent to do great bodily injury to its occupant is a felony).

However, even accepting as true that the crime was severe, once the Deputies arrived to Lomeli's house, they could see that Lomeli did not pose an immediate threat to the safety of the Deputies or others. Lomeli put up his hands when instructed to do so, revealing no weapon in his hand. He voluntarily removed his shirt, exposing no weapon tucked in his waistband. Lomeli may have yelled at the Deputies, but he neither verbally threatened them nor exhibited physically aggressive behavior toward them. On the other hand, Lomeli demonstrated fear when he told them he was afraid of going into the street, worrying he would be beaten or shot, and submission when he repeatedly called out "don't shoot." Moreover, Lomeli eventually did comply with the Deputies' orders to lie face down on the driveway. He subsequently rolled onto his back and was then shot in the chest with the SL6 round.

Although Lomeli did resist arrest, he resisted passively, not actively. The undisputed facts indicate that Lomeli never struggled with the Deputies, swung at them, threatened violence, or attempted to evade arrest by flight. He simply remained on his driveway.

Furthermore, the Deputies never warned Lomeli that they would use the SL6 round against him if he continued passively resisting arrest. Notwithstanding the report that Lomeli previously had been armed, the Court cannot accept that shooting a non-lethal SL6 round at an unarmed suspect who is lying face up on the ground and

has not been physically or verbally aggressive is a reasonable use of force. Precedent supports the Court's position.

For example, in *Deorle v. Rutherford*, the court held that an officer's use of force was excessive. 272 F.3d at 1284. There, Officer Rutherford discharged a "'less-lethal' or 'beanbag' round" at Deorle, hitting him in the face. *Id*. at 1278. Rutherford was responding to an incident in which Deorle was behaving very erratically, screaming and hitting the walls in his house. *Id*. at 1276. Deorle exhibited aggressive behavior—he brandished a hatchet, plastic crossbow, and screamed at an officer that Deorle "would 'kick his ass.'" *Id*. at 1276–77. When Rutherford discharged his weapon, Deorle was advancing toward him at a steady gait, holding either a can or a bottle. *Id*. at 1277. Rutherford did not warn Deorle before firing at him. *Id*. at 1278.

In contrast, Lomeli never even threatened the Deputies. Additionally, when Deputy Torres discharged his weapon, Lomeli was lying flat on his back, unlike Deorle, who was advancing toward Rutherford with an object in his hand. In both instances, there was no warning.

The Court acknowledges that Deorle had only been accused of disturbing the peace, whereas Lomeli had been accused of shooting at a car. Superficially, the distinction may appear significant. The court in *Deorle* explained that "the tactics to be employed against[] an unarmed, emotionally distraught individual who is creating a disturbance or resisting arrest are ordinarily different from those involved in law enforcement efforts to subdue an armed and dangerous criminal who has recently committed a serious offense." *Id*. at 1282–83. Nonetheless, severity of the crime at issue is only one factor to consider. Given that Lomeli was unarmed, lying on his back within five to seven feet from the Deputy and pleading with the Deputy not to shoot him—combined with the fact that he was given no verbal warning of the impending force—the Court cannot find the Deputies' use of force against Lomeli reasonable as a matter of law.

///

The Court also acknowledges that the weapons employed were different. In *Deorle*, Rutherford fired "beanbag" rounds, which basically are lead shot encased in cloth. *Deorle*, 272 F.3d at 1277. Here, Deputy Torres fired a SL6 round, which is a plastic bullet. (Clark Decl. at 4:13–23.) Nonetheless, both are classified by the Los Angeles County Sherriff's Department as "less lethal weapons." (*See* Smith Decl.; L.A. County Sheriff's Dept. Field Operations Directive.)

In sum, because the Ninth Circuit held officers' use of force to be excessive in *Deorle* where Deorle exhibited less threatening behavior than Lomeli did in this case, the Court cannot find that Deputy Torre's use of force in this case was reasonable as a matter of law.

Moreover, the Court finds that there are genuine issues of material fact. For example, Plaintiffs claim Lomeli made no sudden moves and did not reach for his waistband. Defendants deny each of these claims. Plaintiffs aver Lomeli pled not to be shot, which Defendants also dispute. According to Plaintiffs' account, Deputy Torres was a mere five to seven feet away from Lomeli when he discharged the SL6 round. Defendants deny this is true. In light of these disputed facts, summary judgment as a matter of law is improper.

        2.     *Whether Lomeli's constitutional right was clearly established*

The Court similarly finds that a genuine issue of material of fact exists as to whether Lomeli's constitutional right in this case was clearly established. A right is "clearly established" where, "in light of the specific context of the case," it would be "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001). "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id*. at 202. A court should inquire whether the right is clearly established by either Supreme Court or Ninth Circuit precedent. *Boyd v. Benton County*, 374 F.3d 773, 781 (9th Cir. 2004).

///

As discussed *supra*, *Deorle v. Rutherford* clearly establishes a person's right not to be shot with a less lethal weapon where the person "has committed no serious offense, is mentally or emotionally disturbed, has been given no warning of the imminent use of such a significant degree of force, poses no risk of flight, and presents no objectively reasonable threat to the safety of the officer or other individuals." 272 F.3d at 1285. While the facts of *Deorle* are not identical to the facts of this case, there are similarities. Lomeli potentially had committed a fairly serious crime. Nonetheless, he posed no risk of flight and—viewing the facts in the light most favorable to Plaintiffs—presented no objectively reasonable threat to the Deputies' safety. Unlike Deorle, who was steadily approaching the officers, Lomeli was not even moving when he was shot—he was lying face up on the ground. In contrast to Deorle, Lomeli exhibited no aggression. In fact, as Deorle was advancing toward Officer Rutherford with an object in hand that could have been used as a weapon, Deorle told Officer Rutherford he was going to "kick his ass." *Id.* at 1287 (Silverman, J., dissenting). Yet, the *Deorle* court found Officer Rutherford's use of force unreasonable. Therefore, *Deorle* strongly supports the view that Lomeli's right not to be shot with a less lethal weapon by Deputy Torres was clearly established.

Furthermore, Plaintiffs contend that Deputy Torres violated his training when he shot Lomeli. Plaintiffs submitted with their Opposition the declaration of Roy Clark, who averred that trained officers know not to deploy weapons against a suspect who is not physically resisting arrest. (Clark Decl. at 6:11–20.) Indeed, "[o]nly aggressive or combative suspects who are attempting or threatening to assault the officer or another person should be subject to the use of personal weapons in self-defense to gain control." (*Id.*) Plaintiff has therefore submitted evidence tending to show that it was contrary to Deputy Torres's training to discharge the SL6 round at Lomeli in the face of no attempted or threatened assault on Lomeli's part. Further, a reasonable officer should know not to deploy force in violation of the officer's training. Whether Deputy Torres or any other the other Deputies in fact violated their

1 training is an issue of material fact for the jury to decide. The Court therefore cannot
2 rule as a matter of law that Lomeli's constitutional right was or was not clearly
3 established. Accordingly, the Court **DENIES** Defendants' Motion for Summary
4 Judgment as to Plaintiffs' § 1983 claim for excessive force.

### B. PLAINTIFFS' PRAYER FOR PUNITIVE DAMAGES UNDER § 1983

In their Motion, Defendants contend they are entitled to summary adjudication on Plaintiffs' request for punitive damages. Plaintiffs' argue in opposition that there is a genuine issue of material fact regarding the issue of punitive damages. The Court agrees.

Punitive damages may be awarded in a § 1983 claim if the defendant's conduct was malicious, wanton, or oppressive. *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005). Whether the Deputies' conduct here was malicious, wanton, or oppressive is a disputed issue, not appropriate for summary adjudication.

For example, Defendants argue in their Motion that there is no evidence in this case to support punitive damages against the Deputies. In their Reply, Defendants assert that Plaintiffs failed to create a question of fact regarding the reckless or callous nature of the Deputies' actions. To the contrary, Plaintiffs introduced in their Opposition significant evidence upon which a reasonable jury could award punitive damages. Plaintiffs point out in their Opposition that the Deputies repeatedly yelled at Torres to "shoot the motherfucker" and that the Deputies congratulated each other with "high fives" after having shot Lomeli. Whether Plaintiffs' version of the Deputies' conduct is actually what transpired is a question of fact for the jury, and therefore summary adjudication on this issue would be improper. *Liberty Lobby*, 477 U.S. at 253. Accordingly, the Court **DENIES** Defendants' Motion with respect to punitive damages under § 1983.

### IV. CONCLUSION

For the reasons discussed above, the Court **DENIES** Defendants' motion for summary judgment. In addition, Plaintiffs' second claim for *Monell* liability is

1 **DISMISSED** pursuant to Plaintiffs' concession in their Opposition that they intended
2 to voluntarily dismiss that claim. Accordingly, Defendants County of Los Angeles
3 and Leroy Baca are dismissed from this action.

     **IT IS SO ORDERED.**

     March 1, 2012

                              _____
                                  HON. OTIS D. WRIGHT II
                                UNITED STATES DISTRICT JUDGE